UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOVEDEEP A.,[1]<br><br>Petitioner,<br><br>v.<br><br>ORESTES CRUZ, Field Office Director, U.S. Immigration and Customs Enforcement, and TONYA ANDREWS, Warden, Golden State Annex ICE Processing Center,<br><br>Respondents. | No.  1:26-cv-01070-JLT-FJS (HC)<br><br>**FINDINGS AND RECOMMENDATION TO GRANT PETITION AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH A BOND HEARING**<br><br>**[Doc. 1]**<br><br>**[10-DAY OBJECTION DEADLINE]** |

Petitioner Lovedeep A. is a citizen of India pursuing a petition for writ of habeas corpus under 28 U.S.C. § 2241. He filed the instant petition on February 6, 2026. (Doc. 1.) He is challenging his current detention and claims he is entitled to a bond hearing.  Respondents filed a response to the petition on March 7, 2026. (Doc. 7.) On March 23, 2026, Petitioner filed a traverse. (Doc. 10.)

**I.     FACTUAL BACKGROUND**

Petitioner is a native and citizen of India who entered the United States without inspection

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

in November 2021. (Doc. 1 at ¶ 2.) He was determined to be inadmissible and served with a notice and order of expedited removal ("Form I-860") placing him in expedited removal proceedings pursuant to Immigration and Nationality Act ("INA") § 235(b)(1)(A)(iii). (Doc. 1 at ¶ 14; 7-1 at 3; 7-2.) Petitioner expressed a fear of persecution if returned to India. Arora v. U.S. Dept. Homeland Security, 2025 WL 3641586, at *1 (N.D. Cal. Dec. 16, 2026).[2] Normally, when an alien expresses a fear of persecution, an asylum officer conducts a credible fear interview ("CFI") and makes a determination. In this case, it appears that no such CFI was conducted, and no order of expedited removal was issued.

On December 2, 2021, Immigration and Customs Enforcement ("ICE") released Petitioner, without a CFI having been conducted. (Doc. 1 at 2.) The parties disagree on the specific statute under which Petitioner was released. Petitioner alleges he was released pursuant to § 1226(a), because the Form I-220A Order of Release on Recognizance ("OREC") explicitly states that Petitioner was released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations." (Doc. 1-2 at 2.) Respondents contend the OREC was issued in error, because the only statutory mechanism for release available was release on parole pursuant to 8 U.S.C. § 1182(d)(5)(A). (Doc. 7 at 2.)

In January 2022, Petitioner filed an asylum application. Arora, 2025 WL 3641586, at * 1. In September 2022, Petitioner obtained work authorization. Id. Over the next few years, Petitioner worked as a cashier and attended all required immigration check-in meetings. Id.

In June 2025, Respondents dismissed Petitioner's asylum application on the basis that he was subject to expedited removal based on the Form I-860 issued in November 2021 when he first entered the country. Id. About one and one-half months later, apparently realizing a CFI had never been conducted, Respondents scheduled Petitioner for a CFI. Id. The CFI was thereafter

---

[2] Prior to the instant case, Petitioner filed a habeas petition in the Northern District of California seeking to enjoin Respondents from conducting a credible fear interview ("CFI"), removing petitioner pursuant to any order of expedited removal, taking any adverse action against Petitioner for failure to appear for a CFI, detaining him solely pursuant to an expedited removal order, and declining to adjudicate his asylum application on the merits. The court denied Petitioner's motion for temporary restraining order after concluding it lacked jurisdiction over the claims. Arora, 2025 WL 3641586, at *1-2.

continued to October 15. Id.

On August 20, 2025, Petitioner commenced the lawsuit in the Northern District of California. Id. After the lawsuit was initiated, on October 17, 2025, Petitioner appeared for a routine ICE check-in and was detained. (Doc. 1 at ¶ 3.)

On January 2, 2026, a CFI was conducted at which an asylum officer determined Petitioner had a credible fear of persecution. (Doc. 1 at ¶ 3.) ICE then vacated the expedited removal order and placed Petitioner in removal proceedings under INA § 240, 8 U.S.C. §1229a. (Id.)

## I.   JURISDICTION

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.   DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that Respondents have wrongly subjected him to mandatory detention pursuant to 8 U.S.C. § 1225(b). (Doc. 1 at 8-9.) He contends that he is subject to § 1226(a) and therefore entitled to a bond hearing. (Doc. 1 at 8-10.)

Respondents contend that Petitioner is subject to mandatory detention under § 1225(b). Respondents argue that Petitioner was still subject to § 1225(b) when detained, because a CFI had not been conducted and the process was not completed until 2025, when Petitioner was re-detained. Respondents claim the paperwork reflecting Petitioner's release under § 1226(a) was in

error, and that the Government was not authorized to release Petitioner under § 1226(a). (Doc. 7 at 5.) Rather, Respondents argue Petitioner was subject to § 1225 for the entire time Petitioner has been present in the United States, because he never ceased to be an "applicant for admission." (Doc. 7 at 5-6.) Respondents contend that "Petitioner's unchanged status as an 'applicant for admission' is the sole reason he remains subject to mandatory detention under 8 U.S.C. § 1225(b)," and "that decision is not reviewable on habeas." (Doc. 7 at 5-6.)

A.      Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1).  Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in expedited removal proceedings.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). In this case, Petitioner was not provided a CFI interview prior to

4

his release. It was only after the Government later discovered that no such hearing had been provided that it resumed the process.

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).  But an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

In this case, Petitioner was not detained pending a final determination of credible fear. Rather, he was released. Respondents are correct that release could only be accomplished under § 1182(d)(5)(A) in this case, because a final determination of credible fear had not yet been made. Nevertheless, Petitioner was in fact released, "for urgent humanitarian reasons or significant public benefit." Id. "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

B.      Petitioner Possesses a Protected Liberty Interest

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (Due Process

requires hearing before revocation of pre-parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Petitioner's humanitarian parole was similar. For several years, it allowed him to establish ties in the community, work pursuant to a valid work authorization, and pursue relief in his removal proceedings. These actions were made possible by petitioner's freedom, which is "the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). Respondents argue that they nonetheless had authority to re-detain petitioner under § 1225(b). In Ramirez Tesara v. Wamsley, the District Court for the Western District of Washington rejected a similar argument: the court found that the government's "argument does not explain why [immigration authorities] found Petitioner to be eligible for parole [when they released him a year earlier], but not the following year even after he had established deep ties to the community ... and timely filed an asylum application." Ramirez Tesara v. Wamsley, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025). While immigration officials may

6

have had discretion over the initial decision to detain or release petitioner, their decision to release an individual from custody created "an implicit promise" upon which an individual may rely: that his liberty "will be revoked only if [he] fails to live up to the ... conditions [of release]." Morrissey, 408 U.S. at 482. As other courts have found in similar circumstances, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

The Court finds that Petitioner has a protected liberty interest in his release under § 1182(d)(5)(A). See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

C.    Matthews Factors

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required here may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

7

Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for several years in reliance on the government's previous representations that he was being released pending his removal proceedings. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. As there were no procedural safeguards to determine if Petitioner's re-detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. Doe, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that petitioner is entitled to a bond hearing.

D.    Burden of Proof

The Court agrees with the decisions of other courts in this circuit finding that, in this context, the burden is more appropriately placed on the government. See Banda v. McAleenan, 385 F. Supp. 3d 1099, 1107 (W.D. Wash. 2019); Abdul-Samed v. Warden of Golden State Annex Det. Facility, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *8 (E.D. Cal. July 25, 2025); Maliwat v. Scott, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *10 (W.D. Wash. Aug. 7, 2025).

E.    Pre- vs. Post-Deprivation Hearing

The Court concludes that a pre-deprivation hearing is necessary to satisfy due process.

8

"'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty ....").

Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. See Guillermo M. R., 2025 WL 1983677, at *9; United States v. James Daniel Good Real Prop., 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)). Here, it does not appear that there were any exigent circumstances warranting Petitioner's immediate arrest as a flight risk or danger to the public without any pre-deprivation process. Petitioner states he attended all required check-ins, and in fact, he was detained after duly reporting to the latest check-in. The Court concludes that a pre-deprivation hearing is necessary to satisfy due process.

## IV.   RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be GRANTED, and Respondents be DIRECTED to provide Petitioner with a bond hearing before an Immigration Judge.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not

consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:   **March 26, 2026**

FRANK J. SINGER
UNITED STATES MAGISTRATE JUDGE

10